**UNITED STATES of America,
Appellee,**

v.

**Franklin M. GOLDMAN, Defendant,
Appellant.**

**No. 71-1042.**

United States Court of Appeals,
First Circuit.

Nov. 9, 1971.

Francis J. DiMento, Boston, Mass., with whom DiMento & Sullivan, Boston, Mass., was on brief, for appellant.

Lawrence P. Cohen, Asst. U. S. Atty., with whom Herbert F. Travers, Jr., U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Defendant appeals from a conviction for the sale of a narcotic drug, morphine, not in pursuance of a written order, in violation of 26 U.S.C. § 4705(a).[1] Uncontradicted evidence at trial established that on August 18, 1970, the defendant sold two unsealed and four sealed bottles of tablets to a federal undercover narcotics agent for $875. Defendant told the agent at the time of the sale that the two unsealed bottles contained a total of approximately 293 tablets of dilaudid,[2] and that each of the sealed bottles contained 100 morphine tablets.[3] Subsequent chemical analysis revealed that the unsealed bottles were filled with both morphine sulphate and dilaudid pills and that the sealed bottles contained only dilaudid. Defendant's sole defense was that, despite his representations to the agent, he thought all the bottles contained only dilaudid, which he did not know was a narcotic drug.

Defendant raises two contentions on appeal. The first is a fanciful argument that evidence of the morphine

---

1. Now repealed. Pub.L. 91-513, § 1101 (b) (3) (A), October 27, 1970, 84 Stat. 1292.

2. According to unquestioned expert testimony, dilaudid is a narcotic drug derived from morphine.

3. Defendant also proposed a sale of one pound of cocaine for $10,000 to be delivered at a future date.

sulphate tablets went beyond the scope of the government's bill of particulars. The bill of particulars incorporated a one-page chemical analysis report to describe the form and amount of morphine involved in the sale. Under the heading of "alleged drugs" the report listed the drugs as defendant had represented them to the agent: exhibit #1, the unsealed bottles, was described as dilaudid; and exhibit #2, the sealed bottles, as morphine. The laboratory results reported on the same page indicated that in fact exhibit #1 contained both morphine sulphate and dilaudid tablets and exhibit #2 contained only dilaudid. Defendant argues, by what he calls a "chain of reference," that since the indictment charged him with the sale of "morphine," and in the bill of particulars only exhibit #2 was initially described as "morphine," then the true chemical identity of only exhibit #2 (dilaudid) can be introduced against him. The bill of particulars clearly included both dilaudid and morphine sulphate; the evidence of morphine sulphate did not go beyond the confines of the bill. Adoption of the "chain of reference" argument would allow a defendant's false representations to control the admissibility of evidence and would hallmark a return to the strict common law rules of fatal variance, firmly repudiated in modern judicial practice. *See, e. g.,* Rules 7(f), 36, 52(a), Fed.R.Crim.P.; Rules 15, 21, Fed.R.Civ.P.

Defendant's second contention is that the judge failed to instruct the jury adequately on his defense of lack of knowledge. Specifically, he claims that the judge should have mentioned the dilaudid tablets in his charge, on the theory that defendant thought all the pills were dilaudid and did not know dilaudid was a narcotic. Defendant argues that the fact that most of the tablets were dilaudid supports this theory, thus making the mention of "dilaudid" an essential element of the knowledge instruction. The record reveals adequate instructions regarding the requirement of knowledge,[4] and defendant's specific objection to the omission of "dilaudid" as part of this charge comes too late under Rule 30, Fed.R.Crim.P.[5] Defendant's only request and objection with respect to dilaudid was the judge's refusal to leave to the jury the question of whether morphine sulphate and dilaudid were narcotic drugs.[6] Although defendant

---

4. "Before you can find this defendant Goldman guilty of the crime charged in this indictment, you have to find beyond a reasonable doubt that the defendant sold to the government agent Costanzo morphine sulphate, which I charge you is a salt of morphine and a narcotic drug, members of the jury, and that he sold the substance knowingly.

"Now, knowingly means voluntarily, intentionally, with knowledge exactly of what he was doing, that the material he was selling was a narcotic drug.

"The burden is upon the government to prove beyond a reasonable doubt that he knew that the drug that he was selling—that the substance he was selling—was a narcotic drug, and also the burden is upon the government to prove that he did so willfully.

"* * * *

"What is the position of the defendant? It seems to be understood from the argument made by counsel for the defendant here that the defendant did not know what he was selling.

"Goldman admitted he sold this material to Costanzo, but his position, the defendant's position, is that he didn't know it was morphine, members of the jury.

"* * * *

"Of course if Goldman had no knowledge it was a narcotic drug that he was selling at the time, you would have to find Goldman not guilty."

5. "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict stating distinctly the matter to which he objects and the grounds of his objection."

6. Defendant's requests for instructions Nos. 2, 3, and 4 were as follows:

"2. You must acquit the defendant unless you find beyond reasonable doubt that dilaudid is Morphine.

"3. You must acquit the defendant unless you find beyond reasonable doubt that morphine sulphate is Morphine.

now claims his objection referred to the omission of "dilaudid" generally, his objection at trial did not meet the qualitative requirements of Rule 30. In light of the court's full instructions of knowledge, it was not error to limit the charge to morphine sulphate.

Affirmed.

"4. You must acquit the defendant unless you find beyond reasonable doubt that morphine sulphate or dilaudid is Morphine."

These requests were properly denied. Whether morphine sulphate falls within the statute is not a question for the jury, and the jury could convict even if dilaudid was not morphine because the other tablets were. Defendant's objection to the omission of "dilaudid" from the charge related solely to the failure to give these instructions.